IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| VIASYSTEMS TECHNOLOGIES CORP. LLC, | |
| Plaintiff, | |
| v. | Civil Action Number 3:08CV328 |
| FOREST CITY COMMERCIAL DEVELOPMENT, INC., *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

This matter is before the Court on the motion for summary judgment filed by Agere Systems, Inc. ("Agere") (Docket No. 94). In its December 2008 Memorandum Opinion and Order, the Court denied Agere's motion for summary judgment to the extent Agere asserted that it is entitled to indemnification from Viasystems Technologies Corporation, LLC ("Viasystems") or Forest City Commercial Development, Inc. ("FCCD") and Laburnum Investment LLC (collectively referred to as "Forest City") for the entirety of the damages at issue in this litigation, as set forth in the Memorandum Opinion of December 9, 2008. Further briefing was ordered on the issue of the indemnity obligations of Viasystems as, pursuant to the parties' agreement that the Court would address other issues first, Viasystems' indemnity obligations were not strictly before the Court at that time. The narrow issue before the Court now is whether and to what extent Viasystems must indemnify Agere under the relevant agreements. Having reviewed and considered all the relevant pleadings, the Court first notes its previous findings and then makes additional findings.

Previous Findings:

Lucent Technologies Inc. ("Lucent"), the predecessor to Agere, formerly owned and operated a manufacturing facility at 4500 Laburnum Avenue in Richmond (referred to as "the Property"). Due to groundwater contamination by Lucent, the Property was subject to a Resource Conservation Recovery Act ("RCRA") Order from the Environmental Protection Agency ("EPA") requiring a groundwater treatment system (the "Remediation System"). In November 1996, Lucent sold the Property to Circo Craft Technologies, Inc. ("Circo"), the predecessor to defendant Viasystems. As part of that sale, Lucent and Circo entered into a 1996 Environmental, Health and Safety Agreement ("1996 Agreement").

In the 1996 Agreement, Article VI, paragraph 1, Lucent, now Agere, agreed to indemnify Circo, now Viasystems, "for and from any and all Environmental Costs and Liabilities, Environmental Claims or Remedial Actions to the extent relating to, resulting from or arising out of (a) the operation of the Business prior to the Closing, [and] (b) the operation of the remediation system pursuant to the terms of the Order [.]" Lucent also agreed that its "obligation hereunder shall include any obligation to investigate, remediate or otherwise address the presence of Hazardous Materials at, on or under the Facility as of the Closing." In Article VII of the 1996 Agreement, Circo, now Viasystems, agreed to indemnify Lucent, now Agere, "for all Environmental Costs and Liabilities, Environmental Claims or Remedial Actions incurred by Seller [Agere] to the extent relating to, resulting from or arising out of Purchaser's [Viasystems'] operations at the Facility after the date of Closing (including activities by Purchaser [Viasystems] which aggravate conditions existing at the time of Closing, but only to the extent such conduct gives rise to additional

Environmental Costs and Liabilities), or which result from the breach by Purchaser [Viasystems] of any covenant contained in this Agreement."

In 2006, Forest City purchased the Property from Viasystems. As a part of that transaction, Forest City, Viasystems, and Agere entered into a 2006 agreement entitled "First Amendment to Environmental, Health and Safety Agreement" ("2006 Amendment") that modified to some extent the 1996 Agreement. Under paragraph 5 of the 2006 Amendment, Forest City assumed all the rights and obligations of Viasystems under the 1996 Agreement, as of the date of the 2006 Closing. Paragraph 5 also stated that once the 1996 Agreement was assigned, as of the date of the 2006 Closing, Forest City and Agere agree to "forever release" Viasystems and Circo from any liability under the 1996 Agreement, with the exception of Viasystems' indemnity obligations in paragraphs 2, 3, 4, and 7 of the 2006 Amendment. Paragraph 5 of the 2006 Amendment also stated that "Viasystems agrees to look only to Agere with regard to any claim arising from Article VI of the [1996 Agreement]." It also stated that with regard to claims under Article VII of the 1996 Agreement, Agere will "look only to Circo . . . and Viasystems . . . until the [1996 Agreement] is assigned to [Forest City]." This confirms that Agere's obligations under the 1996 Agreement, specifically Article VI, remain with Agere, while Viasystems' obligations under that Agreement are assigned to Forest City, leaving Viasystems with only those indemnity obligations set forth in paragraphs 2, 3, 4, and 7 of the 2006 Amendment. Paragraph 8 of the 2006 Amendment, which states that "[e]xcept as specifically modified by this Amendment, all other terms, provisions and conditions of the [1996 Agreement] remain in full force and effect," also confirms that many of the obligations under the 1996 Agreement remain in effect and unchanged.

Agere remains responsible for "Environmental Costs and Liabilities, Environmental Claims and Remedial Actions" arising out of the operation of the business prior to the 1996 closing. Its obligation includes "any obligation to investigate, remediate or otherwise address the presence of Hazardous Materials at, on or under the Facility as of the Closing," and the 2006 Amendment confirms that Agere's obligations under the 1996 Agreement, specifically Article VI, remain with Agere. The fact that some contamination had remained covered or "buried" for approximately ten years does not do away with Agere's continuing obligations under the 1996 Agreement, as amended by the 2006 Amendment.

Under the 1996 Agreement, as modified by the 2006 Amendment, Agere must indemnify Forest City "for and from any and all Environmental Costs and Liabilities, Environmental Claims or Remedial Actions to the extent relating to, resulting from or arising out of (a) the operation of the Business prior to the Closing, [and] (b) the operation of the remediation system pursuant to the terms of the Order[.]" Agere also agreed in the 1996 Agreement that its "obligation hereunder shall include any obligation to investigate, remediate or otherwise address the presence of Hazardous Materials at, on or under the Facility as of the Closing." These obligations remain in effect. However, due to the assignment to Forest City of Viasystems' obligations under the 1996 Agreement, as set forth in paragraph 5 of the 2006 Amendment, Forest City must indemnify Agere for "Environmental Costs and Liabilities, Environmental Claims or Remedial Actions" that relate to Viasystems' or Forest City's "operations at the Facility after the date of Closing (including activities by Purchaser [Viasystems or Forest City] which aggravate conditions existing at the time of [the 1996] Closing but only to the extent such conduct gives rise to additional Environmental Costs and Liabilities[.]" To further clarify, simply uncovering environmental contamination that

existed prior to the 1996 closing does not "aggravate conditions" or constitute "additional Environmental Costs and Liabilities" so as to implicate Forest City's [or Viasystems'] indemnification of Agere. To "aggravate" a condition requires more than merely uncovering it. But where Forest City's or Viasystems' actions "aggravated conditions" that existed pre-1996 closing, Forest City is liable as to the costs in excess of those attributable to pre-1996 closing conditions. In addition, Forest City is liable to Agere pursuant to paragraph 4 of the 2006 Amendment for losses that arise out of "the demolition of the Facility," which also includes "activities by [Forest City] which aggravate conditions existing prior to Purchaser's acquisition of the Property;" however, this indemnity obligation is also limited to amounts in excess of "those attributable to any conditions existing prior to Purchaser's [Forest City's] acquisition of the Property." Forest City is also liable to Agere pursuant to paragraph 4 of the 2006 Amendment for losses that "arise out of or result from [Forest City's] failure to perform its obligations under this Agreement."

Additional Findings:

"Contract interpretation is a subject particularly suited for summary judgment disposal." Bank of Montreal v. Signet Bank, 193 F.3d 818, 835 (4th Cir. 1999). If the "dispositive contractual language" is "plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." Trex Company, Inc. v. ExxonMobil Oil Corp., 234 F. Supp.2d 572, 575 (E.D.Va. 2002) (internal citations omitted). A contract is not ambiguous simply because the parties disagree on the meaning of the language. "[T]he more sensible rule is that the contract is ambiguous only if the language objectively 'admits of being understood in more than one way or

5

refers to two or more things at the same time.'" Id. (internal citations omitted).  Both Virginia and New York law support these rules.

The 2006 Amendment was entered into by the parties to modify the 1996 Agreement "in connection with the relocation of the Treatment System[1] and the sale of the Property . . . and [the] development of the Property as a retail shopping center."  As noted in the December 2008 Memorandum Opinion, paragraph 5 of the 2006 Amendment states that Viasystems' indemnity obligations with regard to Agere are set forth in paragraphs 2, 3, 4, and 7.[2]

The obligations in paragraph 2 with regard to Viasystems relate to Viasystems' obligation to provide Agere with "individually metered supply and conveyance facilities for water, sewer, telephone, and electrical reasonably necessary to operate the relocated Treatment System."  The remaining provisions of paragraph 2 address rights and obligations of Agere and Forest City.

The obligations in paragraph 3 with regard to Viasystems deal more directly with the relocation of the Treatment System.[3]  Paragraph 3 states in part: "Agere agrees to allow Viasystems

---

[1] The 2006 Amendment refers to the groundwater remediation, treatment and monitoring system that Agere must maintain and operate as the "Treatment System," while the 1996 Agreement referred to the system as the "Remediation System."  The 2006 Agreement of Sale between Viasystems and FCCD ("2006 Purchase Agreement") also uses the term "Remediation System."

[2] Although paragraph 5 of the 2006 Amendment includes paragraph 7 in its list of paragraphs that contain "Viasystems' indemnity obligations to Agere," paragraph 7 actually addresses Agere's agreement to provide Forest City and Viasystems copies of any notice or correspondence between Agere and the EPA with regard to the Environmental Cleanup Orders.

[3] Paragraph 11(a) of the 2006 Purchase Agreement between Viasystems and FCCD also deals directly with the relocation of the Treatment System.  It states that after the Relocation Plan is approved by the EPA, Viasystems "shall promptly undertake the relocation of the Remediation System at its sole cost and expense[.]"  It also requires that "[i]n the event that any hazardous substances, materials or contamination are encountered during the course of [Viasystems] relocating the Remediation System, or [Forest City] conducting the Demolition Plan or Remediation System Grading Plan at the direction of Earthtech, [Viasystems] covenants and agrees to fully comply at its sole cost and expense with all of the laws, rules and regulations of USEPA or Virginia DEQ with

to relocate the Treatment System in accordance with the Plan[.]" It also states: "In addition to paying the direct costs associated with the relocation of the Treatment Plant, Viasystems agrees to reimburse Agere for its reasonable out-of-pocket costs associated with overseeing the relocation of the Treatment System[.]" The additional provisions of paragraph 3 are related to the timing of the relocation and cooperation among the parties.

> The obligations in paragraph 4 with regard to Viasystems and Agere are as follows:
>
> Viasystems will indemnify and hold harmless Agere . . . from and against any losses, damages, claims, fines, penalties and expenses (including reasonable attorney's fees) that arise out of or result from (a) the actual relocation of the Treatment System, including, without limitation, any expansion of the Environmental Cleanup Orders directly arising out of the relocation of the Treatment Plant, (b) any newly discovered environmental contamination requiring remediation during the course of the relocation of the Treatment System or the exacerbation of pre-existing contamination that results in an expansion of Agere's obligations under the Environmental Cleanup Orders.

This means that, in addition to Viasystems' obligations pursuant to paragraph 3 for the "direct costs associated with the relocation of the Treatment Plant" and for reimbursing Agere for the "reasonable out-of-pocket costs" incurred by Agere in "overseeing the relocation of the Treatment System," Viasystems is also obligated pursuant to paragraph 4[4] to indemnify Agere for three categories of

---

respect to such hazardous materials, substances or contaminated soils."

[4]Additionally, paragraph 4 of the 2006 Amendment sets forth the indemnification obligations of Forest City, which are not the subject of this Memorandum Opinion. It also states that "[n]othing in this paragraph shall be construed to shift to Viasystems or Purchaser any of Agere's obligations under the Environmental Cleanup Orders as of the Effective Date of this Agreement *other than as specifically set forth in this Agreement*" (emphasis added). This last sentence of paragraph 4 confirms that Agere's obligations under the Environmental Cleanup Orders remain, except as "specifically set forth in this Agreement," which is consistent with the language describing Viasystems' indemnity obligations as including "any expansion of the Environmental Cleanup Orders directly arising out of the relocation of the Treatment Plant" (the first category in paragraph 4) and "the exacerbation of pre-existing contamination that results in an expansion of Agere's

losses and expenses in connection with the relocation of the Treatment System.  First, indemnity is due for any loss or expense arising out of or resulting from the relocation of the Treatment System, including, without limitation**,** any expansion of the Environmental Cleanup Orders directly arising out of the relocation.  Second, indemnity is due for any loss or expense arising out of or resulting from any newly discovered environmental contamination requiring remediation during the course of the relocation of the Treatment System.  This category addresses previously unknown environmental contamination for which remediation is required during the course of the relocation of the Treatment System.[5]  Language referring to an "expansion of the Environmental Cleanup Orders" is not included in the description of this category because there would not be an Environmental Cleanup Order in place for newly discovered – and therefore, previously unknown – environmental contamination.  Third, indemnity is due for any loss or expense arising out of or resulting from the exacerbation of pre-existing contamination that results in an expansion of Agere's obligations under the Environmental Cleanup Orders.  This category addresses contamination that was previously known, that was likely the subject of one or more Environmental Cleanup Orders, that was exacerbated during the course of the relocation, and that results in an expansion of Agere's obligations under the Environmental Cleanup Orders.

Both Viasystems and Agere make arguments regarding the effect of the term "Plan" or "Relocation Plan," as defined in the various agreements but, with regard to Viasystems' obligations to Agere, the Court finds that these arguments are not particularly helpful.  Viasystems' indemnity

---

obligations under the Environmental Cleanup Orders" (the third category in paragraph 4).

[5]This obligation is consistent with Viasystems' obligations in Paragraph 11(a) of the 2006 Purchase Agreement, set forth in footnote 3 herein.

obligations with regard to Agere include any losses or expenses that fall within the three categories described in paragraph 4 and as explained herein. Based on the agreements, these losses or expenses are limited to those that arise out of or result from the relocation of the Treatment System and are not necessarily limited to a particular geographic area.

Accordingly, Agere's motion for summary judgment will be granted in part and denied in part as described herein.

An appropriate Order shall issue.

March 31, 2009  /s/
DATE  RICHARD L. WILLIAMS
SENIOR UNITED STATES DISTRICT JUDGE