IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| FOREST CITY COMMERCIAL DEVELOPMENT, INC. and LABURNUM INVESTMENT, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>AGERE SYSTEMS INC.,<br><br>Defendant and Third-Party Plaintiff. | Civil Action Number 3:08CV328 |

## MEMORANDUM OPINION

This matter is before the Court on Agere Systems Inc.'s ("Agere") motion to dismiss count two of the amended complaint filed by Forest City Commercial Development, Inc. and Laburnum Investment, LLC (collectively "Forest City")(Docket No. 131) and Viasystems Technologies Corp., LLC's ("Viasystems") motion to dismiss Agere's third-party complaint against Viasystems (Docket No. 146). Also before the Court are Agere's motions to compel and to deem responses to requests for admissions admitted, as to Forest City (Docket Nos. 99 & 103). These matters are briefed, and the Court finds that the decision-making process would not be aided by oral argument.

The Court has issued two memorandum opinions previously in this matter. In its December 2008 Memorandum Opinion and Order, the Court denied Agere's motion for summary judgment to the extent Agere asserted that it is entitled to indemnification from Viasystems or Forest City for the entirety of the damages at issue in this litigation, as set forth in the Memorandum Opinion of December 9, 2008 (Docket No. 116). Further briefing was ordered on the issue of the indemnity

obligations of Viasystems as, pursuant to the parties' agreement that the Court would address other issues first, Viasystems' indemnity obligations were not strictly before the Court at the time the December 9, 2008 Memorandum Opinion was issued. In its March 2009 Memorandum Opinion and Order, the Court granted in part and denied in part Agere's motion for summary judgment with regard to the indemnity obligations of Viasystems. The Court specifically held that:

> Viasystems' indemnity obligations with regard to Agere include any losses or expenses that fall within the three categories described in paragraph 4 and as explained herein. Based on the agreements, these losses or expenses are limited to those that arise out of or result from the relocation of the Treatment System and are not necessarily limited to a particular geographic area.

Memorandum Opinion issued March 31, 2009 (Docket No. 121). All of the Court's previous findings of fact and legal rulings are now the law of the case, *see Quern v. Jordan,* 440 U.S. 332, 347 n.18 (1979) (citing *In re Sanford Fork & Tool Co.*, 160 U.S. 247 (1895) ("[N]o question, once considered and decided by [the] court, can be re-examined at any subsequent stage of the same case.")), and both Memorandum Opinions, set forth herein, and all Orders are hereby incorporated by reference.

On January 11, 2010, Forest City filed an amended complaint against Agere seeking judgment on counts one and two of the amended complaint for compensatory damages in excess of $1.3 million plus interest, and attorneys' fees in excess of $500,000, expenses, and costs of bringing this action, and such other relief as the Court deems just and proper. Agere filed a counterclaim against all plaintiffs for alleged breach of contract, seeking judgment against plaintiffs and damages, including but not limited to attorneys' fees and expenses. Agere also filed a third-party complaint against Viasystems for indemnification pursuant to the Amended Environmental Agreement, referred to in the Court's previous opinion's as the 2006 Amendment. Having reviewed and

2

considered all the relevant pleadings, the Court first sets forth the relevant portions of its previous decisions and then considers the instant motions.

2008 Memorandum Opinion

> Lucent Technologies Inc. ("Lucent"), the predecessor to Agere, formerly owned and operated a manufacturing facility at 4500 Laburnum Avenue in Richmond (referred to as "the Property"). Due to groundwater contamination by Lucent, the Property was subject to a Resource Conservation Recovery Act ("RCRA") Order from the Environmental Protection Agency ("EPA") requiring a groundwater treatment system (the "Remediation System"). In November 1996, Lucent sold the Property to Circo Craft Technologies, Inc. ("Circo"), the predecessor to defendant Viasystems. As part of that sale, Lucent and Circo entered into a 1996 Environmental, Health and Safety Agreement ("1996 Agreement").
> In the 1996 Agreement, Article VI, paragraph 1, Lucent, now Agere, agreed to indemnify Circo, now Viasystems, "for and from any and all Environmental Costs and Liabilities, Environmental Claims or Remedial Actions to the extent relating to, resulting from or arising out of (a) the operation of the Business prior to the Closing, [and] (b) the operation of the remediation system pursuant to the terms of the Order [.]" Lucent also agreed that its "obligation hereunder shall include any obligation to investigate, remediate or otherwise address the presence of Hazardous Materials at, on or under the Facility as of the Closing." In Article VII of the 1996 Agreement, Circo, now Viasystems, agreed to indemnify Lucent, now Agere, "for all Environmental Costs and Liabilities, Environmental Claims or Remedial Actions incurred by Seller [Agere] to the extent relating to, resulting from or arising out of Purchaser's [Viasystems'] operations at the Facility after the date of Closing (including activities by Purchaser [Viasystems] which aggravate conditions existing at the time of Closing, but only to the extent such conduct gives rise to additional Environmental Costs and Liabilities), or which result from the breach by Purchaser [Viasystems] of any covenant contained in this Agreement."
> In 2006, Forest City purchased the Property from Viasystems. As a part of that transaction, Forest City, Viasystems, and Agere entered into a 2006 agreement entitled "First Amendment to Environmental, Health and Safety Agreement" ("2006 Amendment") that modified to some extent the 1996 Agreement. Under paragraph 5 of the 2006 Amendment, Forest City assumed all the rights and obligations of Viasystems under the 1996 Agreement, as of the date of the 2006 Closing. Paragraph 5 also stated that once the 1996 Agreement was assigned, as of the date of the 2006 Closing, Forest City and Agere agree to "forever release" Viasystems and Circo from any liability under the 1996 Agreement, with the exception of Viasystems' indemnity obligations in paragraphs 2, 3, 4, and 7 of the 2006 Amendment. Paragraph 5 of the 2006 Amendment also stated that "Viasystems agrees to look only to Agere with regard to any claim arising from Article VI of the [1996 Agreement]." It also stated that with regard to claims under Article VII of the

3

1996 Agreement, Agere will "look only to Circo . . . and Viasystems . . . until the [1996 Agreement] is assigned to [Forest City]." This confirms that Agere's obligations under the 1996 Agreement, specifically Article VI, remain with Agere, while Viasystems' obligations under that Agreement are assigned to Forest City, leaving Viasystems with only those indemnity obligations set forth in paragraphs 2, 3, 4, and 7 of the 2006 Amendment. Paragraph 8 of the 2006 Amendment, which states that "[e]xcept as specifically modified by this Amendment, all other terms, provisions and conditions of the [1996 Agreement] remain in full force and effect," also confirms that many of the obligations under the 1996 Agreement remain in effect and unchanged.

Agere remains responsible for "Environmental Costs and Liabilities, Environmental Claims and Remedial Actions" arising out of the operation of the business prior to the 1996 closing. Its obligation includes "any obligation to investigate, remediate or otherwise address the presence of Hazardous Materials at, on or under the Facility as of the Closing," and the 2006 Amendment confirms that Agere's obligations under the 1996 Agreement, specifically Article VI, remain with Agere. The fact that some contamination had remained covered or "buried" for approximately ten years does not do away with Agere's continuing obligations under the 1996 Agreement, as amended by the 2006 Amendment.

Under the 1996 Agreement, as modified by the 2006 Amendment, Agere must indemnify Forest City "for and from any and all Environmental Costs and Liabilities, Environmental Claims or Remedial Actions to the extent relating to, resulting from or arising out of (a) the operation of the Business prior to the Closing, [and] (b) the operation of the remediation system pursuant to the terms of the Order[.]" Agere also agreed in the 1996 Agreement that its "obligation hereunder shall include any obligation to investigate, remediate or otherwise address the presence of Hazardous Materials at, on or under the Facility as of the Closing." These obligations remain in effect. However, due to the assignment to Forest City of Viasystems' obligations under the 1996 Agreement, as set forth in paragraph 5 of the 2006 Amendment, Forest City must indemnify Agere for "Environmental Costs and Liabilities, Environmental Claims or Remedial Actions" that relate to Viasystems' or Forest City's "operations at the Facility after the date of Closing (including activities by Purchaser [Viasystems or Forest City] which aggravate conditions existing at the time of [the 1996] Closing but only to the extent such conduct gives rise to additional Environmental Costs and Liabilities[.]" To further clarify, simply uncovering environmental contamination that existed prior to the 1996 closing does not "aggravate conditions" or constitute "additional Environmental Costs and Liabilities" so as to implicate Forest City's [or Viasystems'] indemnification of Agere. To "aggravate" a condition requires more than merely uncovering it. But where Forest City's or Viasystems' actions "aggravated conditions" that existed pre-1996 closing, Forest City is liable as to the costs in excess of those attributable to pre-1996 closing conditions. In addition, Forest City is liable to Agere pursuant to paragraph 4 of the 2006 Amendment for losses that arise out of "the demolition of the Facility," which also includes

"activities by [Forest City] which aggravate conditions existing prior to Purchaser's acquisition of the Property;" however, this indemnity obligation is also limited to amounts in excess of "those attributable to any conditions existing prior to Purchaser's [Forest City's] acquisition of the Property." Forest City is also liable to Agere pursuant to paragraph 4 of the 2006 Amendment for losses that "arise out of or result from [Forest City's] failure to perform its obligations under this Agreement."

2009 Memorandum Opinion

"Contract interpretation is a subject particularly suited for summary judgment disposal." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 835 (4th Cir. 1999). If the "dispositive contractual language" is "plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Trex Company, Inc. v. ExxonMobil Oil Corp.*, 234 F. Supp.2d 572, 575 (E.D.Va. 2002) (internal citations omitted). A contract is not ambiguous simply because the parties disagree on the meaning of the language. "[T]he more sensible rule is that the contract is ambiguous only if the language objectively 'admits of being understood in more than one way or refers to two or more things at the same time.'" *Id*. (internal citations omitted). Both Virginia and New York law support these rules.

The 2006 Amendment was entered into by the parties to modify the 1996 Agreement "in connection with the relocation of the Treatment System[1] and the sale of the Property . . . and [the] development of the Property as a retail shopping center." As noted in the December 2008 Memorandum Opinion, paragraph 5 of the 2006 Amendment states that Viasystems' indemnity obligations with regard to Agere are set forth in paragraphs 2, 3, 4, and 7.[2]

The obligations in paragraph 2 with regard to Viasystems relate to Viasystems' obligation to provide Agere with "individually metered supply and conveyance facilities for water, sewer, telephone, and electrical reasonably necessary

---

[1] The 2006 Amendment refers to the groundwater remediation, treatment and monitoring system that Agere must maintain and operate as the "Treatment System," while the 1996 Agreement referred to the system as the "Remediation System." The 2006 Agreement of Sale between Viasystems and FCCD ("2006 Purchase Agreement") also uses the term "Remediation System."

[2] Although paragraph 5 of the 2006 Amendment includes paragraph 7 in its list of paragraphs that contain "Viasystems' indemnity obligations to Agere," paragraph 7 actually addresses Agere's agreement to provide Forest City and Viasystems copies of any notice or correspondence between Agere and the EPA with regard to the Environmental Cleanup Orders.

5

to operate the relocated Treatment System." The remaining provisions of paragraph 2 address rights and obligations of Agere and Forest City. The obligations in paragraph 3 with regard to Viasystems deal more directly with the relocation of the Treatment System.[3] Paragraph 3 states in part: "Agere agrees to allow Viasystems to relocate the Treatment System in accordance with the Plan[.]" It also states: "In addition to paying the direct costs associated with the relocation of the Treatment Plant, Viasystems agrees to reimburse Agere for its reasonable out-of-pocket costs associated with overseeing the relocation of the Treatment System[.]" The additional provisions of paragraph 3 are related to the timing of the relocation and cooperation among the parties.

The obligations in paragraph 4 with regard to Viasystems and Agere are as follows:

> Viasystems will indemnify and hold harmless Agere . . . from and against any losses, damages, claims, fines, penalties and expenses (including reasonable attorney's fees) that arise out of or result from (a) the actual relocation of the Treatment System, including, without limitation, any expansion of the Environmental Cleanup Orders directly arising out of the relocation of the Treatment Plant, (b) any newly discovered environmental contamination requiring remediation during the course of the relocation of the Treatment System or the exacerbation of pre-existing contamination that results in an expansion of Agere's obligations under the Environmental Cleanup Orders.

This means that, in addition to Viasystems' obligations pursuant to paragraph 3 for the "direct costs associated with the relocation of the Treatment Plant" and for reimbursing Agere for the "reasonable out-of-pocket costs" incurred by Agere in "overseeing the relocation of the Treatment System," Viasystems is also obligated

---

[3] Paragraph 11(a) of the 2006 Purchase Agreement between Viasystems and FCCD also deals directly with the relocation of the Treatment System. It states that after the Relocation Plan is approved by the EPA, Viasystems "shall promptly undertake the relocation of the Remediation System at its sole cost and expense[.]" It also requires that "[i]n the event that any hazardous substances, materials or contamination are encountered during the course of [Viasystems] relocating the Remediation System, or [Forest City] conducting the Demolition Plan or Remediation System Grading Plan at the direction of Earthtech, [Viasystems] covenants and agrees to fully comply at its sole cost and expense with all of the laws, rules and regulations of USEPA or Virginia DEQ with respect to such hazardous materials, substances or contaminated soils."

pursuant to paragraph 4[4] to indemnify Agere for three categories of losses and expenses in connection with the relocation of the Treatment System. First, indemnity is due for any loss or expense arising out of or resulting from the relocation of the Treatment System, including, without limitation, any expansion of the Environmental Cleanup Orders directly arising out of the relocation. Second, indemnity is due for any loss or expense arising out of or resulting from any newly discovered environmental contamination requiring remediation during the course of the relocation of the Treatment System. This category addresses previously unknown environmental contamination for which remediation is required during the course of the relocation of the Treatment System.[5] Language referring to an "expansion of the Environmental Cleanup Orders" is not included in the description of this category because there would not be an Environmental Cleanup Order in place for newly discovered – and therefore, previously unknown – environmental contamination. Third, indemnity is due for any loss or expense arising out of or resulting from the exacerbation of pre-existing contamination that results in an expansion of Agere's obligations under the Environmental Cleanup Orders. This category addresses contamination that was previously known, that was likely the subject of one or more Environmental Cleanup Orders, that was exacerbated during the course of the relocation, and that results in an expansion of Agere's obligations under the Environmental Cleanup Orders.

---

[4] Additionally, paragraph 4 of the 2006 Amendment sets forth the indemnification obligations of Forest City, which are not the subject of this Memorandum Opinion. It also states that "[n]othing in this paragraph shall be construed to shift to Viasystems or Purchaser any of Agere's obligations under the Environmental Cleanup Orders as of the Effective Date of this Agreement *other than as specifically set forth in this Agreement*" (emphasis added). This last sentence of paragraph 4 confirms that Agere's obligations under the Environmental Cleanup Orders remain, except as "specifically set forth in this Agreement," which is consistent with the language describing Viasystems' indemnity obligations as including "any expansion of the Environmental Cleanup Orders directly arising out of the relocation of the Treatment Plant" (the first category in paragraph 4) and "the exacerbation of pre-existing contamination that results in an expansion of Agere's obligations under the Environmental Cleanup Orders" (the third category in paragraph 4).

[5] This obligation is consistent with Viasystems' obligations in Paragraph 11(a) of the 2006 Purchase Agreement, set forth in footnote 3 herein.

7

> Both Viasystems and Agere make arguments regarding the effect of the term "Plan" or "Relocation Plan," as defined in the various agreements but, with regard to Viasystems' obligations to Agere, the Court finds that these arguments are not particularly helpful. Viasystems' indemnity obligations with regard to Agere include any losses or expenses that fall within the three categories described in paragraph 4 and as explained herein. Based on the agreements, these losses or expenses are limited to those that arise out of or result from the relocation of the Treatment System and are not necessarily limited to a particular geographic area.
> Accordingly, Agere's motion for summary judgment will be granted in part and denied in part as described herein.

<u>Viasystems' motion to dismiss third-party complaint</u>

Viasystems moves to dismiss the third-party complaint with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint[.]" *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 556 U.S. at ----, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

As a general rule, a Rule 12(b)(6) motion to dismiss for failure to state a claim does not permit the Court to look outside the complaint. *See* Fed. R. Civ. P. 12(d); *Gasner v. County of Dinwiddie*, No. 3:05cv378, 162 F.R.D. 280, 281 (E.D. Va. 1995). Further, as a general rule, if the

Court does consider "matters outside the complaint," it must convert the motion into a motion for summary judgment, affording the parties a "reasonable opportunity to present all material made pertinent to such a motion." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). However, a court is permitted to consider matters on the public record in connection with a motion to dismiss without converting the motion to one for summary judgment. *See Papasan v. Allain,* 478 U.S. 265, 268 n.1 (1986). Such documents include "official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, No. 05-1378, 164 Fed. Appx. 395, 396 (4th Cir. Jan. 31, 2006) (citing *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) and *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).

Viasystems argues that Agere's third-party complaint fails to state a claim against Viasystems because Agere is seeking indemnification for a claim that is not being made against it. Forest City's amended complaint against Agere makes clear that it is only seeking to recover damages for contamination that occurred before 1996, and it specifically states that it is not seeking damages for any costs incurred as a result of or related to the actual relocation of the Remediation System. (Amended Complaint at ¶¶ 15, 30, 31). Therefore, Viasystems argues, given the limitations of the allegations in Forest City's amended complaint against Agere, because Forest City has explicitly stated it only seeks to recover for pre-1996 contamination, all of which Forest City alleges was discovered outside the scope of the actual relocation of the Remediation System, there is no set of facts that Agere can plead that would entitle it to recover against Viasystems. Accordingly,

9

Viasystems argues that Agere's third-party complaint against Viasystems fails as a matter of law and should be dismissed with prejudice.

Agere opposes the motion to dismiss its third-party complaint. It correctly states that the Court has previously ruled that Viasystems has certain indemnity obligations in this matter, just as the Court has ruled that Agere has certain indemnity obligations in this matter.[1] However, in paragraph 22 of the third-party complaint, Agere misstates Viasystems' indemnity obligations as set forth in paragraph 4 of the 2006 Amendment, omitting significant wording. The Court previously held that the obligations in paragraph 4 of the 2006 Amendment with regard to Viasystems and Agere are as follows:

> Viasystems will indemnify and hold harmless Agere . . . from and against any losses, damages, claims, fines, penalties and expenses (including reasonable attorney's fees) that arise out of or result from (a) the actual relocation of the Treatment System, including, without limitation, any expansion of the Environmental Cleanup Orders directly arising out of the relocation of the Treatment Plant, (b) any newly discovered environmental contamination requiring remediation during the course of the relocation of the Treatment System or the exacerbation of pre-existing contamination **that results in an expansion of Agere's obligations under the Environmental Cleanup Orders.**

Agere omitted the highlighted wording in paragraph 22 of the third-party complaint.

Specifically with regard to the motion to dismiss, Agere argues that it is not bound by the

---

[1] In the 2008 Opinion, the Court stated: "Agere remains responsible for 'Environmental Costs and Liabilities, Environmental Claims and Remedial Actions' arising out of the operation of the business prior to the 1996 closing. Its obligation includes 'any obligation to investigate, remediate or otherwise address the presence of Hazardous Materials at, on or under the Facility as of the Closing,' and the 2006 Amendment confirms that Agere's obligations under the 1996 Agreement, specifically Article VI, remain with Agere. The fact that some contamination had remained covered or 'buried' for approximately ten years does not do away with Agere's continuing obligations under the 1996 Agreement, as amended by the 2006 Amendment."

allegations in the amended complaint. Federal Rule of Civil Procedure 14(a)(1) states that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Several circuits have described the "core purpose of Rule 14 " as "avoiding unnecessary duplication and circuity of action." *Lehman v. Revolution Portfolio L.L.C.*, 166 F.3d 389, 394 (1st Cir. 1999). "Thus, as long as a third-party actions falls within the general contours limned by Rule 14(a), does not contravene customary jurisdictional and venue requirements, and will not work unfair prejudice, a district court should not preclude its prosecution." *Id*. at 395. *See also Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 650 (7th Cir. 2002) (quoting *Lehman*). But, as noted by the Fourth Circuit, and recently discussed by Judge Payne, "a third-party claim under Rule 14(a) can be maintained only if the asserted liability is in some way derivative of the main claim." *E.I. duPont de Nemours and Co. v. Kolon Industries, Inc*., ___ F. Supp.2d ___, 2009 WL 2762614 (E.D. Va. 2009) (citing *Scott v. PPG Indus*., 920 F.2d 927, 938 (4th Cir. 1990); *Watergate Landmark Condominium Unit Owners' Assoc. v. Wiss, Janey, Elstner Assoc., Inc.*, 117 F.R.D. 576, 578 (E.D. Va. 1987)). As the court in *Watergate* explained:

> [A] third party claim is not appropriate where the defendant and putative third party plaintiff says, in effect, "It was him, not me ." Such a claim is viable only where a proposed third party plaintiff says, in effect, "If I am liable to plaintiff, then my liability is only technical or secondary or partial, and the third party defendant is derivatively liable and must reimburse me for all or part ... of anything I must pay plaintiff.

117 F.R.D. at 578. In this case, Forest City's amended complaint against Agere contains two counts: breach of contract, under the 1996 Agreement and the 2006 Amendment, and unjust enrichment. Forest City essentially alleges that it uncovered environmental contamination and incurred

11

substantial costs in connection with, relating to, and arising out of Agere's business operations during or prior to 1996 that is subject to indemnification by Agere. It also alleges that by failing to remediate or address contamination and by failing to indemnify or reimburse Forest City, Agere has been unjustly enriched at Forest City's expense. Agere's third-party complaint against Viasystems contains a single count seeking indemnification from Viasystems. It states: "[i]f the contamination at issue is found to be the result of the relocation of the Remediation System and/or demolition connected with the relocation of the Remediation System, then Viasystems must indemnify and hold harmless Agere, pursuant to ¶ 4 of the Amended Environmental Agreement [the 2006 Amendment], and must pay Agere's damages, including, but not limited to, attorneys' fees in defending this action and enforcing the Amended Environmental Agreement." Given the nature of the allegations in the amended complaint and in the third-party complaint, "the asserted liability [of Viasystems] is in some way derivative of the main claim" as required by Rule 14. Accordingly, the motion to dismiss the third-party complaint will be denied.

Agere's motion to dismiss count two of the amended complaint

Agere moves to dismiss count two of the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) based on the argument that claims for unjust enrichment may be pled only where there exists no written or express contract of any kind between the parties. Forest City responds that Federal Rule of Civil Procedure 8 specifically permits parties to set forth two or more claims alternatively. *See* Fed. R. Civ. P 8(d)(2). Forest City also argues that the unjust enrichment claim may apply despite the express agreements between the parties because Agere had obligations that were in addition to Agere's obligations under the agreements, such as those under federal and state environmental laws. As Forest City argues, the Supreme Court of Virginia has noted that "the

law will not impose an implied contractual relationship upon the parties *in contravention* of an express contract." *Nedrich v. Jones*, 429 S.E.2d 201, 207 (Va. 2001) (citing *Royer v. Board of County Supervisors*, 10 S.E.2d 876, 881 (Va. 1940)). However, it cannot be said at this stage of the proceedings that Forest City's environmental clean-up not expressly contemplated by the parties' contracts in any way contravenes the agreements with Agere. As such, Forest City's unjust enrichment claim is properly pled and will not be dismissed.

Discovery Motions

With regard to Agere's motions to compel and to deem Forest City's responses to requests for admissions admitted, those motions will also be denied. In an attempt to accommodate the parties and encourage settlement of this matter, on October 9, 2008, the Court issued an order that stated: "All discovery is STAYED except by special Order of the Court." Given the unique procedural posture of this matter, that stay has remained in place in an attempt to keep costs down and encourage settlement. Accordingly, the motions are denied. The stay of discovery will be lifted, and a scheduling order setting this matter for a pretrial conference will be issued shortly.

An appropriate Order shall issue.


June 1, 2010                                /s/
DATE                    RICHARD L. WILLIAMS
                        SENIOR UNITED STATES DISTRICT JUDGE